

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**08/26/2015**

| | | |
|---|---|---|
| IN RE: | § | |
| ATP OIL & GAS CORPORATION | § | CASE NO: 12-36187 |
| Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| HARVEY GULF INTERNATIONAL | § | |
| MARINE INC | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 13-03244 |
| | § | |
| ATP OIL & GAS CORPORATION, *et al* | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

Bennu's motion for summary judgment is granted.  Harvey Gulf's alleged statutory liens do not constitute Senior Prior Liens under the relevant sale documents and Orders.  Accordingly, Judgment will be granted to Bennu.

### Summary of Opinion

The decisive issue before the Court is whether Harvey held a lien for work performed during 20012, to which Credit Suisse subordinated its lien rights. Credit Suisse only subordinated to valid liens, and only to specified liens then in existence.  If Harvey Gulf's LOWLA lien *does* relate back to 2009, then the 2012 work would be protected by the subordination agreement.  If the lien *does not* relate back to 2009, then the 2012 work would not be protected by the subordination agreement.  Because the lien does not relate back (as set forth below), Harvey Gulf may not prevail against Credit Suisse's successor, Bennu.

### Harvey Gulf's Agreements with ATP

From May 31, 2009 until April 7, 2012, Harvey Gulf provided towing and transportation services for ATP in connection with certain federal oil and gas lease blocks on the Outer Continental Shelf—Gulf of Mexico (collectively, the "OCS Leases") (ECF No. 37 at 1).

On October 1, 2009, ATP entered into a Conveyance of Overriding Royalty Interest agreement ("ORRI") affecting the Subject Interests, including but not limited to the Telemark property. (ECF No. 37 at 2). Harvey Gulf and ATP also executed a Farmout Agreement in favor of Harvey Gulf, which was specifically referred to and incorporated into the ORRI agreement. (ECF No. 37-20; ECF No. 37-5 at 5; ECF No. 37-6 at 7).

The Farmout Agreement does not grant a lien. Rather, it recognizes the possible existence of lien rights under applicable law. The parties agree that the relevant "applicable law" is the Louisiana Oil Well Lien Act (LOWLA). Paragraph 2.1 of the Farmout Agreement includes a provision that attempts to modify the Louisiana Oil Well Lien Act's continuity requirement for establishing relation back on its statutory liens. The provision states:

> 2.1 Contribution: Notwithstanding the terms and Provisions of the Time Charters with respect to total per day charter hire rates invoiced by Farmee throughout the terms of the Time Charters for services provided by Farmee, the percentage of each invoiced amount as indicated on Exhibit 1 (the "Base Amount") will be payable in accordance with the Time Charters and Farmee shall have all available lien rights under applicable law for the Work, excluding the Farmout Related Services only **(provided however the Parties agree the Work shall not be deemed to have ceased or interrupted for lien purposes)**.

(ECF No. 37-20 at 3-4) (bold emphasis added).

It is undisputed that there was a 352 day gap in Harvey Gulf's services on the Telemark property from April 29, 2010 to April 16, 2011. (EFC No. 35 at 7). During this break in services—on March 1, 2011—Harvey Gulf assigned its rights and interests under the Farmout Agreement (while retaining its obligations and liabilities thereunder) to SOF Investments. (ECF

No. 39-1 at 2-3).  This assignment was recorded in the appropriate Louisiana parish on April 29, 2011. (ECF No. 39 at 7, 8).

Harvey Gulf resumed its services for ATP on April 16, 2011 and continued through April 7, 2012. (ECF No.35-2 at 3).  ATP failed to pay Harvey Gulf for services it provided on the OCS Leases from February 14, 2012 to April 7, 2012. (ECF No. 37 at 7).  The aggregate principal amount owed for these unpaid services totals $2,885,133.50. *Id.*  Consequently, on July 30, 2012, Harvey Gulf recorded a lien pursuant to the Louisiana Oil Well Lien Act ("LOWLA") in Plaquemines Parish, Louisiana. *Id.* In September of 2012, Harvey Gulf recorded its lien in several other parishes in Louisiana and certain counties in Mississippi. *Id.* at 8.  These recordations were undertaken pursuant to LOWLA, but Harvey now purports that the lien rights include rights attributable to work that was performed outside of LOWLA's continuity requirement.  The recordations are for statutory LOWLA liens, not for consensual liens executed by ATP.

### Credit Suisse and Bank of New York Mortgages

On April 23, 2010, ATP issued and sold $1.5 billion of senior second lien notes, pursuant to an Indenture between ATP and the Bank of New York Mellon (BNY), as Trustee. (ECF No. 37 at 6).  ATP executed a mortgage, security agreement, fixture filing, and assignment of production in favor of BNY, which was recorded in the mortgage records of Plaquemines Parish, Louisiana on May 3, 2010.  (ECF No. 37 at 6).

On June 18, 2010, ATP entered into a credit agreement with Credit Suisse as administrative and collateral agent, which provided for initial term loans of $150 million. *Id.* ATP executed a mortgage, security agreement, fixture filing, and assignment of production in certain interests to Credit Suisse which included the OCS Leases. *Id.* This credit agreement was

recorded in the mortgage records of Plaquemines Parish, Louisiana on June 21, 2010. *Id*. Pursuant to agreement among, *inter alia*, ATP, BNY and Credit Suisse, the liens and mortgages granted under the BNY Mortgage were subordinated to the liens and mortgages granted under the Credit Suisse Mortgage. *Id*.

BNY and Credit Suisse executed subordination agreements under which the mortgages and liens granted in favor of BNY and Credit Suisse were subordinated in order to allow for the conveyance of the ORRI interests to Harvey Gulf. (ECF No. 37 at 7).  The Act of Subordination of Lien states that Credit Suisse "does hereby agree that the lien, security interest and other rights created by the Collateral Documents against the Subject Properties shall be hereby made subordinate, subject and inferior to the rights of [Harvey Gulf] as to the Subject Properties under the Conveyance up to the Aggregate Amount" of $20,000,000. (ECF No. 9-4 at 1-2).  Further, this document references the farmout agreement between Harvey Gulf and ATP.  Accordingly, at a minimum, Credit Suisse had constructive knowledge of the relation back modification provision included in the farmout agreement.

There is not a serious legal question as to whether Bennu (when it stands in the shoes as an assignee of Credit Suisse) is bound by the subordination agreement.  Bennu is bound to subordinate when it stands in Credit Suisse's shoes.   But, Credit Suisse only subordinated to liens that were defined in its 2009 subordination agreement.  Because Harvey Gulf's lien for its 2012 work is a 2012 lien, that does not relate back to 2009, Bennu (standing in Credit Suisse's shoes) is not subordinated.

### Senior Lien Cutoff Date

On January 17, 2012 ATP filed for Chapter 11. On September 20, 2012 this Court entered a final debtor in possession order ("DIP order"), which in relevant part, granted liens and

adequate protection. (ECF No. 37 at 10).  The DIP order established June 21, 2010 as the senior lien cutoff date and enabled ATP to obtain financing by granting DIP liens on most of its interests including the OCS Leases. (ECF No. 35 at 2-3).  The DIP Order established the DIP liens as senior in priority to all other liens except for those liens which met the definition of a "senior prior lien" as established in the DIP order. *Id.*

Pursuant to the sale to Bennu, ATP and Credit Suisse (as DIP Agent)—who designated Bennu as purchaser of the Purchased Assets via credit bid of Credit Suisse's liens—executed an Asset Purchase Agreement which provides, *inter alia*, that Credit Suisse would pay "$55,000,000.00 in cash to satisfy legitimate Liens on Assets that are ranked senior to the DIP Claims…" (Case No. 12-36187, ECF No. 2706-1 at 27).  Bennu wears two separate hats in this adversary proceeding: (i) as a successor in interest to ATP; and (ii) as a successor in interest to Credit Suisse.

On October 17, 2013 this Court entered a final sale order approving the sale of certain of ATP's assets free and clear of claims and liens to Bennu and confirming that "[t]he Purchase Price will include (i) cash in the amount of $55,000,000.00 to fund an escrow for the purpose of satisfying legitimate liens on the Purchased Assets that rank senior in priority to the liens securing the DIP Claims (the **"Senior Liens"**)." (Case No. 12-36187, ECF No. 2706 at 7). The final sale order allowed the sale of the OCS Leases and approved Bennu's assumption and assignment of contracts and leases from ATP. (*Id*.).

### Harvey's Gulf's Alleged 'Senior Prior Lien'

On September 14, 2012, Harvey Gulf filed its Notice of Perfection, Continuation, or Maintenance of Liens in ATP's bankruptcy case. (Case No. 12-36187, ECF No. 355).  After this Court's Order Approving the Lien Identification Process, Harvey Gulf filed its Original Lien

Identification Statement on February 11, 2013. (ECF No. 37 at 9). The original statement listed May 30, 2011 as the relation back date for the start of services provided by Harvey Gulf to ATP. *Id.*

On February 15, 2013, Harvey Gulf filed its Supplemental Lien Identification Statement, which did not change the relation back date. *Id.* However, on July 30, 2014, Harvey Gulf filed its Amended Lien Identification Statement which listed May 31, 2009 as the lien inception date for services provided by Harvey Gulf to ATP between February 14, 2012 and April 7, 2012. *Id.* Accordingly, Harvey Gulf seeks to establish that its lien is a Senior Prior Lien subject to payment from the lienholders' escrow under the APA and final sale order.

Pursuant to the sale agreement, Bennu substituted for ATP and Credit Suisse in this dispute on June 9, 2014. (Case No. 13-03244, ECF No. 37 at 13). On November 14, 2014, Bennu filed its motion seeking summary judgment against Harvey Gulf, asserting that Harvey Gulf's lien is not a Senior Prior Lien because it cannot relate back to a date before the June 21, 2010 senior lien cutoff date. (Case No. 13-03244, ECF No. 35).

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the

outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

There is no consensual lien granted by ATP to Harvey Gulf. Harvey Gulf holds a statutory lien under LOWLA. The dispute is whether the benefits of the statutory lien could be modified by ATP and Harvey Gulf.

The Louisiana Oil Well Lien Act creates a statutory service lien for oil field service providers. A LOWLA lien can "relate back" to an earlier date when services were performed on a well site if there is not "a lapse of more than ninety consecutive days between an activity or event that establishes the privilege." La. Rev. Stat. § 9:4864(c) (2014). "If more than ninety consecutive days elapse between such activities or events, the privilege established before and

those established after such time are separate." *Id*.  The undisputed 352-day gap in Harvey Gulf's services lasting from April 29, 2010 until April 11, 2011 constitutes a gap of greater than 90 days after the senior lien cutoff date of June 21, 2010. (ECF No. 35 at 2).  Bennu therefore asserts that Harvey Gulf's lien covering its unpaid services is effective April 11, 2011, well after the June 21, 2010 senior lien cutoff date.

In its response, Harvey Gulf claims that the Farmout Agreement between it and ATP modified the statutory requirements of LOWLA by waiving any requirement to establish continuity of services for Harvey Gulf's relation back date. (ECF No. 37 at 2, 3).  Harvey Gulf further argues that the relation back modification provision included in the Farmout Agreement—which it alleges created a lien that is effective as of May 31, 2009—is enforceable against Bennu.

For the reasons set forth below, the attempted modification of the statutorily established relation back and continuity doctrine was ineffective.  Accordingly, Bennu's rights are not subordinated to the 2012 unpaid expenses owed to Harvey Gulf.

### Modifying LOWLA's Continuity Requirement

Pursuant to § 9:4864(a) of LOWLA: "The privilege in favor of a claimant is established and is effective as to a third person when: (1) The claimant, who is a contractor, laborer, or employee begins rendering services at the well site; (2) Movables sold by the claimant to an operator or contractor are delivered to the well site; (3) The claimant begins transporting movables to, or persons to or from, the well site; and (4) Property leased by the claimant to an operator or contractor is placed on the well site for use in operations." La. Rev. Stat. § 9:4864 (a).

Section 9:4864(c) permits a claimant's lien to relate back to the date on which the services commenced, provided that the claimant satisfies the ninety day continuity requirement:

> All obligations owed to a claimant arising from operations on the same operating interest, without a lapse of more than ninety consecutive days between an activity or event that establishes the privilege as described in Subsection A of this Section, are secured by a single privilege whether or not such activities are performed or events occur at different times and under several contracts with different operators or contractors. If more than ninety consecutive days elapse between such activities or events, the privileges established before and those established after such time are separate.

La. Rev. Stat. § 9:4864 (c).

LOWLA expressly recognizes the superiority of mortgages and security interests filed before the LOWLA lien is established.  La. Rev. Stat. § 9:4870(B)(2), (3); *see also In re Equinox Oil Co., Inc.,* 300 F.3d 614, 617 (5th Cir. 2002).

Accordingly, LOWLA sets up a statutory scheme by which LOWLA liens established before a mortgage or security interest -- including by relation back under § 9:4864 -- are superior, and LOWLA liens established after a mortgage or security interest are junior. (ECF No. 35 at 7).

For purposes of this motion, the Court will assume that the language in the Farmout Agreement—which states "provided however the Parties agree the Work shall not be deemed to have ceased or interrupted for lien purposes"—was intended to modify the continuity requirement for establishing relation back under § 9:4864(c) and that the language applies to the lien Harvey Gulf currently asserts against the Telemark Property (all of which Bennu disputes). (ECF No. 37-20 at 3-4).

The following facts are undisputed: Harvey Gulf began rendering services on the Telemark property on May 31, 2009.  There was approximately a one year gap in Harvey Gulf's services on the Telemark property between 2010 and 2011.  Harvey Gulf's alleged lien relates

solely to its claim for unpaid services that it provided from February 14, 2012 to April 7, 2012. Harvey Gulf must establish that its lien predates June 21, 2010 (i.e. the senior lien cutoff date) in order to assert a "senior prior lien."

Accordingly, Harvey Gulf relies on its argument that the parties are allowed to contract around LOWLA's continuity requirement to establish May 31, 2009 as Harvey Gulf's lien inception date securing the obligations owed for services it performed in 2012.

After reviewing the applicable Louisiana statutes and case law, the Court finds that ATP and Harvey Gulf could not modify the relation back requirement for establishing a lien under LOWLA.

Article 3185 of the Louisiana Revised Civil Code states, "Privilege can be claimed only for those debts to which it is expressly granted in this Code." La. Civ. Code Ann. art. 3185. LOWLA precludes lien claimants from utilizing relation back where services have been discontinued for more than 90 days by expressly providing for the *separate* treatment of services provided before and after the ninety day continuity requirement expires: "If more than ninety consecutive days elapse between such activities or events, the privilege established before and those established after such time are separate." La. Rev. Stat. § 9:4864(c) (2014).

Harvey Gulf's alleged contractual lien violates the Louisiana Supreme Court's holding in *Capillon*, where it held that "a lien, unlike a mortgage, cannot be created by convention or contract between the debtor and creditor unless there is a statute declaring that such a contract shall create the lien." *Capillon v. Chambliss*, 211 La. 1, 17, 29 So. 2d 171, 176 (1946). "It is well recognized in our jurisprudence that liens and privileges are stricti juris and that the party who claims or asserts one must be able to put his finger on the law under which it is granted."

*Blasingame v. Anderson*, 236 La. 505, 519, 108 So. 2d 105, 110 (1959); *see also Guichard Drilling Co. v. Alpine Energy Serv., Inc.*, 657 So. 2d 1307, 1313 (La. 1995).

There is no grant of a mortgage by ATP to Harvey Gulf.  Accordingly, under *Capillon*, the parties are limited to their statutory rights.

Several Louisiana Appellate Courts have also held that liens (or privileges) created by contract are prohibited in Louisiana and may only be created pursuant to statute.  *Smith v. Unity Industrial Life Ins. Co*., 13 So.2d 129, 131 (La. App. Or. Cir. 1943) ("[T]he stipulation did not, of itself, have the effect of producing a lien, because privileges are offsprings of the law and cannot be created by contract."); *see also Pelican State Associates, Inc. v. Winder*, 208 So. 2d 355, 357 (La. App. 1st Cir. 1968) writ issued, 252 La. 178, 210 So. 2d 56 (1968) and judgment reinstated, 253 La. 697, 219 So. 2d 500 (1969) ("[T]he operative effect of a privilege may never be extended by implication or analogy to any situation not explicitly and precisely contemplated by the statute creating it.").

La. Rev. Stat. Ann.  9:4864 contains the continuity requirement.  Subsection A enumerates four ways under which a privilege is established **and** made effective as to a third person. (*See* La. Rev. Stat. Ann. 9:4864).

Subsection C then expressly states that the continuity requirement relates to **establishing the privilege**, and then sets forth the consequences of failing to satisfy such requirement:

> All obligations owed to a claimant arising from operations on the same operating interest, without a lapse of more than ninety consecutive days between an activity or event that **establishes the privilege as described in Subsection A of this Section**, are secured by a single privilege whether or not such activities are performed or events occur at different times and under several contracts with different operators or contractors. If more than ninety consecutive days elapse between such activities or events, **the privileges established before and those established after such time are separate.**

La. Rev. Stat. Ann. 9:4864(c) (emphasis added).

Subsection C therefore states that the ninety day continuity requirement applies to establishing the "privilege as described in Subsection A"—which refers to establishing the privilege **and** making it effective as to a third person.  Accordingly, the ninety-day requirement relates both to establishing the privilege and making it effective as to a third person.

The Court is unaware of any Louisiana court that has interpreted LOWLA in a manner that permits parties to create a contractual lien in contravention of the express terms of LOWLA. Nor is the Court aware of any case law that permits a contractual modification of any other Louisiana privilege.

For its relation back modification argument, Harvey Gulf relies on Texas and Louisiana case law that holds that parties are free to contract as they see fit as long as their agreement does not contravene public policy; and that there is no case law that expressly prohibits the modification of a relation back provision. (ECF No. 37 at 18).  However, case law permitting parties to contract as they see fit does not allow Harvey Gulf and ATP to contract around the express requirements for creating a lien under a Louisiana statute.

Accordingly, to the extent that the Farmout Agreement is an attempt to modify the requirements of LOWLA, it is unenforceable.

### Conclusion

The Court will enter a Judgment consistent with this Memorandum Opinion.

SIGNED **August 25, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE